COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-065-CR

DONALD WAYNE READ APPELLANT

V.

THE STATE OF TEXAS       STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY 

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Donald Wayne Read of felony driving while intoxicated (DWI).  The trial court sentenced Read to fifteen years’ confinement.  In four points, Read argues that the evidence is insufficient to support the guilty verdict, that the trial court abused its discretion by denying his motion to quash the indictment, that the trial court abused its discretion by denying his motion to suppress the test results of the Intoxilyzer 5000, and that the trial court erred by allowing State’s Exhibit 6 into evidence.  We affirm.

II.  Background Facts

Just after 2:00 a.m. on August 7
, 2004, Alicia King, a civilian, called the Azle Police Department to complain about a van driving in an unsafe and erratic manner.  Shortly thereafter, Azle police officers Patrick Bovea and Bill Jones received a dispatch regarding a possible intoxicated driver in a brown van. Roughly one minute later, Officer Bovea spotted the brown van and, after activating his in-car camera, began to follow it.

Officer Bovea testified that while following the van he witnessed the van’s right tires cross the broken white line and then return to the passing lane on four separate occasions.  Following the fourth incident, Officer Bovea proceeded to stop the van.  Officer Bovea approached the van and directed Read, the driver, to exit the vehicle.  Officer Bovea testified that he smelled a strong odor of alcohol on Read’s breath, that Read’s voice was “slurred and soft,” and that Read “didn’t have a real good balance.”

Officer Bovea commenced field sobriety tests, specifically the horizontal gaze nystagmus, the walk-and-turn, the one-leg stand, the nose touch, and alphabet and counting tests.  The results of the horizontal gaze nystagmus test indicated that Read’s eyes did not pursue smoothly and that nystagmus was present in both eyes.  Officer Bovea testified that during the walk-and-turn test Read failed to touch heel to toe several times and used his arms for balance. Officer Bovea testified that during the one-leg stand Read swayed while he balanced, put his foot down for balance, and used his arms to regain his balance.  During the nose touch, Read swayed while doing the evaluation and missed touching his nose with his right finger on one occasion.  Additionally, Read was unable to properly state the sequence during both the alphabet and counting tests.

While Read was undergoing the field sobriety tests, Officer Robert Spohn arrived at the scene as a back-up.  Officer Spohn testified that he also smelled the strong odor of alcohol on Read’s breath.  Officer Spohn testified that with the exception of the horizontal gaze nystagmus test, he was able to witness Read’s performance on the field sobriety tests.  Officer Spohn testified that at some point during the tests Read informed him that he had “a metal or steel rod in his leg.”  Following the tests, it was the opinion of the three officers on the scene that Read was intoxicated from alcohol.

Officer Bovea placed Read under arrest for investigation for driving while intoxicated.  An inventory of the contents of Read’s van was completed, and Read was transported to the station for further investigation.  At the station, Read agreed to submit to a breath test.  At 4:07 a.m. the first breath sample was taken which registered .136.  A second breath sample was taken at 4:10 a.m. and registered .129.

Read was indicted for felony DWI.  Prior to trial, both parties stipulated that Read had two prior final convictions for DWI.  A trial on the merits commenced on January 24, 2006, and resulted in a hung jury.  A second trial on the merits commenced on February 7, 2006, and resulted in a guilty verdict. Read was sentenced to fifteen years’ confinement. 

III.  Legal Sufficiency

In his first point, Read challenges the legal sufficiency of the evidence to support his guilty verdict. 

A.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to
 the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
 

B. Legally Sufficient Evidence of Felony DWI
 

Section 49.04 of the Texas Penal Code defines the offense of DWI.  
See 
Tex. Penal Code Ann.
 § 49.04 (Vernon 2003).  Under this provision, a person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.  
See id.
 “Intoxicated” means (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol or (B) having an alcohol concentration of .08 or more.  
Id.
 § 49.01(2).  Section 49.09 may elevate the offense to a felony if the person has previously been convicted at least twice for DWI. 
 Id.
 
§ 49.09(b)(2).

Thus, to obtain a conviction for felony DWI, the State needed to prove that (1) Read was intoxicated, (2) while operating a motor vehicle, (3) in a public place, and (4) Read had twice previously been convicted of DWI.  The only point of contention in this case was Read’s intoxication.  Read did not contest the fact that he was operating a van in a public place, and he stipulated prior to trial that he had previously been convicted of DWI on September 21, 1988, and again on June 27, 1995. 

Here, the State introduced evidence from three officers that Read showed signs of impairment.  Officer Bovea testified that he witnessed Read’s van cross the broken white line and return to the passing lane on four separate occasions. Both Officers Bovea and Spohn testified that they smelled the odor of alcohol on Read.  All three officers present at the scene testified that after witnessing Read’s field sobriety test performance, it was their opinion that Read was intoxicated from alcohol.  The testimony of an officer that a person is intoxicated may provide sufficient evidence to establish the element of intoxication.  
See Annis v. State
, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979).

Additionally, the jury viewed video of both Read’s field sobriety tests and intoxilyzer room interview.  Furthermore, the State presented evidence that Read’s blood alcohol registered above the legal limit of .08.  Breath test results might not be conclusive proof that a defendant was intoxicated at the time he was driving; however, evidence of breath test results, coupled with the arresting officer’s testimony of his observations and the videotape of the stop, are probative evidence of the defendant’s intoxication.  
See Stewart v. State
, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

At trial, Read argued that the field sobriety test results were caused by a lack of sleep and that the video of Read’s performance of the field sobriety tests differed from the officer’s testimony.  Read also challenged the validity of the Intoxilyzer results.  The jury was in the best position to judge the credibility of the witnesses, and reconciliation of any conflict between the testimony and other evidence, such as the videotape, was a duty for the jury.  
See Marshall v. State
, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); 
Heiselbetz v. State
, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Viewed in the light most favorable to the verdict, the testimony was sufficient for a rational trier of fact to have found beyond a reasonable doubt the essential elements of felony driving while intoxicated.  We conclude that the evidence was legally sufficient to prove the essential elements of the offense of felony DWI.  We overrule Read’s first point.

IV. Felony Repetition

In his second point, Read challenges the trial court’s denial of his motion to quash the indictment.  Specifically, Read argues that his prior DWI convictions were too remote to be utilized for felony enhancement.
(footnote: 2)
 Chapter 49 of the Penal Code became effective on September 1, 1994.
(footnote: 3) Prior to that date, DWI convictions were charged under article 67011-1.
(footnote: 4) A conviction which occurred under article 67011-1 after January 1, 1984, but prior to September 1, 1994, may properly be used to enhance a sentence.  
See Ex parte Serrato
, 3 S.W.3d 41, 42 (Tex. Crim. App. 1999); 
State v. Verhoeven, 
151 S.W.3d 637, 642 (Tex. App.—Fort Worth 2004, pet. ref’d).
  

Former section 49.09(e) of the Texas Penal Code, in effect at the time of the charged offense, imposed a remoteness restriction on the use of the prior convictions.
(footnote: 5)  
In order to exclude a prior conviction from use for jurisdictional enhancement, three conditions must be met: (1) the prior conviction must be final; (2) the current offense must have been committed more than ten years after the latest date determined under section 49.09(e)(2); and (3) the defendant must not have been convicted of any other intoxication related offense within ten years of the latest date under section 49.09(e)(2).  
See Getts v. State
, 155 S.W.3d 153, 156–57 (Tex. Crim. App. 2005).  The latest date under section 49.09(e)(2) for measuring the expiration of more than ten years is either the date of judgment of the prior conviction, the date of discharge from community supervision, the date of completion of parole, or the date the defendant completed serving a term of confinement or imprisonment for the prior conviction.  
Id.
 at 156. 

Here, Read stipulated before trial that he had a 1988 DWI conviction and a 1995 DWI conviction.  Read first argues that arrest dates, as opposed to conviction dates, should have been used to calculate the elapsed time between offenses.  When interpreting a statute, we attempt to effect the intent of the legislature.  
Griffith v. State
, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003).  “The starting point in analyzing the meaning of a statute is the language of the statute itself.” 
 Ex parte Evans
, 964 S.W.2d 643, 646 (Tex. Crim. App. 1998).  The latest date under section 49.09(e)(2) for measuring the expiration of more than ten years is either the date of judgment of the prior conviction, the date of discharge from community supervision, the date of completion of parole, or the date the defendant completed serving a term of confinement or imprisonment for the prior conviction.  
Getts, 
155 S.W.3d at 156.  The plain language of the statute makes it clear that the date of arrest is immaterial in applying section 49.09(e)’s remoteness restriction on the use of the prior convictions. 

Read next argues that the law in effect in 1988 precluded the State’s use of the 1988 conviction for enhancement.  A conviction which occurred under article 67011-1 after January 1, 1984, but prior to September 1, 1994, may properly be used to enhance a sentence.  
See Serrato
, 3 S.W.3d at 42.  In order to exclude a prior conviction from use for jurisdictional enhancement, three conditions must be met: (1) the prior conviction must be final; (2) the current offense must have been committed more than ten years after the latest date determined under section 49.09(e)(2); and (3) the defendant must not have been convicted of any other intoxication related offense within ten years of the latest date under section 49.09(e)(2).  
See Getts
, 155 S.W.3d at 156–57. 

Here, the current offense occurred on August 7, 2004.  No matter what date is considered for Read’s 1988 conviction, the latest possible date under section 49.09(e)(2) would still be well within ten years of his 1995 DWI conviction.  Therefore, because Read’s 1995 conviction was within ten years of Read’s 1988 conviction, the 1988 conviction failed the third condition of section 49.09(e) and was available to enhance the current offense to felony DWI.  Similarly, no matter what date is considered for Read’s 1995 DWI conviction, the latest possible date under section 49.09(e)(2) would still be well within ten years of August 7, 2004, the date of the current offense.  The 1995 conviction failed the second condition of section 49.09(e)(2) and was available to enhance the current offense to felony DWI.  Both the 1988 DWI conviction and the 1995 DWI conviction were available for enhancement.  We overrule Read’s second point.

V.  Motion to Suppress

In his third point, Read argues that the trial court abused its discretion in denying his motion to suppress the results of two breath tests.  Specifically, Read contends that the trial court erred by admitting breath test results procured by use of the Intoxilyzer 5000 because the instrument was not reliable, the waiting period from offense to sample was excessive, and because unauthorized persons had access to the machine.

A.  Standard of Review
 

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652–53.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.

B. Reliability

Here, following a hearing, the first trial court denied Read’s motion to suppress the breath test results, and the parties agreed that rulings made in the first trial would carry forward into the second trial.  Read argues that absent retrograde extrapolation, the breath test results were unreliable and therefore should have been excluded as irrelevant.

Generally, to be admissible, scientific testimony must be sufficiently reliable and relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice.  
See Kelly v. State
, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).  

To be considered reliable, evidence must satisfy three criteria: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question.  
See
 
id.
 at 573.  The Legislature has determined that the underlying scientific theory behind breath tests is valid, and the technique applying the theory is also valid provided that the specimen was taken and analyzed by individuals who are certified by, and were using methods approved by, the rules of the department.  
See 
Tex. Transp. Code Ann.
 § 724.064 (Vernon 1999); 
Reynolds v. State
, 204 S.W.3d 386, 390–91 (Tex. Crim. App. 2006).  Additionally, all a trial court need do to satisfy its “gate-keeping” function regarding reliability is to determine whether the technique was properly applied in accordance with department rules on the particular occasion in question.  
See Reynolds
, 204 S.W.3d at 391. 

Here, Read’s breath specimen was administered and analyzed by Officer Spohn.  Officer Spohn was certified to operate the Intoxilyzer 5000.  
Officer Spohn testified regarding the procedures he followed in administering the test.  Mark Fondren, senior forensic chemist with the Tarrant County Medical Examiner’s office, testified at length regarding the maintenance of the Azle police department’s Intoxilyzer 5000. 

Read argued that the results of a breathalyzer test could vary according to a number of variables.  Such evidence goes to the weight to be accorded to the results, not to their admissibility.  
See Slagle v. State
, 570 S.W.2d 916, 919 (Tex. Crim. App. 1978).  The trial court was in the best position to determine that the technique underlying the breath test was valid and properly applied on the occasion in question.

Additionally, Read argues that the breathalyzer results were unreliable because “others had access” to the Intoxilyzer 5000.  However, Read supplies no argument or authority regarding how this fact invalidates his Intoxilyzer results.  By raising an issue and failing to present any argument or authority on that issue, the party waives that issue.  
See Jackson v. State
, 50 S.W.3d 579, 598 n.1 (Tex. App.—Fort Worth 2001, pet. ref’d); 
See also
 
Tex. R. App. P.
 38.1(h).  Read has waived the right to complain about this issue on appeal.

C.  Relevance

Read also argues that the results were irrelevant and inadmissible without retrograde extrapolation testimony.  The lack of retrograde extrapolation evidence does not render breath test results inadmissible.  
See
 
Stewart v. State
, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).  Read’s breath test results tended to make it more probable that he was intoxicated at the time he drove under either definition of intoxication because they provided evidence that Read had consumed alcohol.  The fact that the breath test results may not have conclusively proved that Read was intoxicated at the time he drove is of no consequence.  

The trial court was in the best position to determine that the probative value of the breath test results, absent retrograde extrapolation, was not substantially outweighed by undue prejudice.  We overrule Read’s third point.

VI. Admissibility of Vehicle Inventory

In his fourth point, Read argues that the trial court erred in allowing into evidence State’s Exhibit 6.  Specifically, Read contends that a “Vehicle Impoundment and Inventory Record” was not produced to the defense in a timely manner.

In 
Brady
, the United States Supreme Court concluded that the suppression by the prosecution of material evidence favorable to a defendant violates due process without regard to the good or bad faith of the prosecution.  
See Brady v. Maryland, 
373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963).  To establish a 
Brady 
violation, three requirements must be satisfied: (1) the state suppressed evidence, (2) the suppressed evidence is favorable to defendant, and (3) the suppressed evidence is material.  
See Little v. State
, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).  Favorable evidence is any evidence, that, if disclosed and used effectively, may make a difference between conviction and acquittal.  
See Harm v. State
, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006).  It is irrelevant whether suppression of the favorable evidence was done willfully or inadvertently.  
See
 
Strickler v. Greene
, 527 U.S. 263, 263– 64, 119 S. Ct. 1936, 1939–40 (1999)
.  
To prevail on a 
Brady 
claim where the State’s disclosure is tardy, the appellant must show that the late disclosure prejudiced him. 
See
 
In re A.C.
, 48 S.W.3d 899, 905 (Tex. App.—Fort Worth 2001, pet. denied).  To show prejudice, the appellant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the outcome of the proceeding would have been different.  
Id. 
at 905
.

Here, during a break in the trial, the State produced a “Vehicle Impoundment and Inventory Record.”  Among other things, the document described the condition of Read’s vehicle on the night of his arrest.  On the form, Officer Spohn indicated that the tires, along with all of the other various parts of the van, were in poor condition.  Read objected, complaining that the production of the document, which was not contained in the State’s file on Read, was untimely.  Read contends that it was the poor condition of his tires, not alcohol, that caused his erratic driving, and the inventory report, had it been discovered prior to trial, would have corroborated this.

Read has failed to show that, had the evidence been disclosed earlier, the outcome of the proceeding would have been different.  Read had the ability at trial to cross-examine the officers regarding the contents of the document.  Read does not explain how he would have changed the cross-examination if he had had more time for reflection.  The officers obtained probable cause to stop Read after witnessing Read’s tires cross the white line on four separate occasions.  Whether the resulting stop occurred by reason of poor tires or alcohol is of no consequence.  That the State belatedly produced a report that showed Read’s van was in poor condition does not disprove Read’s intoxication.  The evidence of the odor of alcohol on Read’s breath and Read’s performance on the field sobriety tests provided sufficient bases for the officers’ conclusion of intoxication.  Based on this record, there is no reasonable probability that the outcome of the proceeding would have been different had the State disclosed the vehicle inventory earlier.  We overrule Read’s fourth point.

VII. Conclusion

Having overruled each of Read’s points, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 29, 2007

   

FOOTNOTES
1:
See
 T
ex
. R. A
pp
. P. 47.4.   

2: The State cites 
Smith v. State
 for the proposition that by stipulating to the prior DWIs, Read waived the right to complain.  We would agree with the State had Read’s argument gone to the existence of the prior DWIs and not to the remoteness of the prior DWIs.  
See Smith v. State
, 158 S.W.3d 463, 465 (Tex. Crim. App. 2005) (holding that when an appellant stipulates to the existence of prior DWI convictions, he cannot later argue that the State failed, at trial, to establish the existence of the prior convictions).  Therefore, Read’s complaint is not waived.

3: Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3766.

4: Act of May 27, 1983, 68th
 Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1574–77, 
repealed by
 Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586, 3704.

5:
See
 Act of June 13, 2001, 77th
 Leg., R.S., ch. 648 § 2, 2001 Tex. Gen. Laws 1213, 1214, 
repealed by
 Act of June 18, 2005, 79th
 Leg., R.S., ch. 996, § 3, 2005 Tex. Gen. Laws 3363, 3364.