**In the Matter of A.C.**

**No. 2–00–077–CV.**

Court of Appeals of Texas,
Fort Worth.

June 7, 2001.

Michael Berger, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles Mallin, Asst. Crim. D.A. and Chief of the Appellate Section; and John A. Stride, Terri Pearce, Asst. Crim. D.A.'s, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

CAYCE, Chief Justice.

### INTRODUCTION

After a bench trial, the trial court adjudicated appellant delinquent on two counts of making a terroristic threat and placed him on probation for one year. In four points, appellant argues that the evidence is legally and factually insufficient to support the judgment of delinquency, the State failed to disclose exculpatory evidence in time for trial, and his waiver of his right to a jury trial was not entered knowingly and voluntarily. We will affirm.

### BACKGROUND

Over a two-week period in September of 1999, appellant, an eighth grader at Carter Junior High School, made a variety of sexual comments to two female classmates, J.M. and C.L. Both J.M. and C.L. prepared written statements at their school when they reported the incident to the vice-principal. They also prepared sworn written statements for the police six weeks later.

C.L. testified that appellant asked her bra size and said, "Do you want to suck my dick?" C.L. told him "no" and to get away from her. Appellant told the girls that if they told anybody about the comments, he would "blow [their] brains out with a nine millimeter." Appellant also stated that he was going to come up to the school with his "homeboys" and kill the girls. C.L. testified that appellant told J.M. that he was going to grab her chest and when J.M. responded, "I'll slap you," appellant told her that "if she touched him, that would be the last person she would ever touch, because he would blow her brains out." C.L. read part of her written statement to the court, which included the following: "[H]e asked me if I was stuck up, and I said no, and then he said, let's go to the bathroom and let me ram my dick down your throat and see how unstuck-up you are." C.L. also testified that she was afraid and she felt appellant might follow through on his threats.

J.M. testified that appellant tried to touch her chest and asked her when she was going to let him "hit it," which she understood to refer to sexual intercourse. Appellant also asked her what she would do if he touched her chest, to which she replied that she would slap him. Appellant then told her "that's the last person you would ever slap because I would put a nine millimeter to your head." J.M. testified that she feared serious bodily injury and believed appellant was capable of carrying out his threats. J.M. read part of her written statement to the court, which included the following: "[H]e slapped me softly, so I hit him back, and he said if I ever hit him again, it would be the last time I hit anyone." J.M. testified that she thought his statement meant that he was going to kill her. J.M. also testified that appellant told her and C.L. that if they

told anybody "he was going to blow [their] brains out."

## TERRORISTIC THREAT

In his first and second points, appellant challenges the legal and factual sufficiency of the evidence to support the trial court's judgment of delinquency. Specifically, he argues that because his comments to J.M. and C.L. constituted only conditional threats of future violence, the evidence is insufficient to prove beyond a reasonable doubt that he intended to place J.M. and C.L. in fear of imminent serious bodily injury. *See* Tex. Penal Code Ann. § 22.07(a)(2) (Vernon 1994).

■ In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment.[1] *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim. App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safe-

guard ensuring only the rationality of the fact finder. *Williams v. State,* 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The judgment may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

■ In reviewing the factual sufficiency of the evidence, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim. App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the judgment, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

■ Section 22.07 of the penal code provides, in relevant part:

### § 22.07. Terroristic Threat

(a) A person commits an offense if he threatens to commit any offense involv-

---

1. The State urges us to employ the civil standard of review in our determination of the legal sufficiency of the evidence to support a trial court's adjudication of delinquency. We have recently held, however, that *Jackson v. Virginia* is the appropriate standard to utilize in analyzing whether the evidence is legally sufficient to show a juvenile engaged in delinquent conduct as alleged in the State's petition. *In re J.S.,* 35 S.W.3d 287, 292 (Tex. App.—Fort Worth 2001, no pet.).

ing violence to any person or property with intent to:

    . . . .

    (2) place any person in fear of imminent serious bodily injury[.]

TEX. PENAL CODE ANN. § 22.07(a)(2). Imminent means "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." BLACK'S LAW DICTIONARY 750 (6th ed.1990); *see also Devine v. State,* 786 S.W.2d 268, 270 (Tex.Crim.App.1989); *Cook v. State,* 940 S.W.2d 344, 347 (Tex.App.—Amarillo 1997, pet. ref'd). Conditioning a threat of harm on the occurrence or nonoccurrence of a future event does not necessarily mean that the harmful consequences threatened are not imminent. *Cook,* 940 S.W.2d at 348. The focus of the inquiry should be whether the complainant was afraid of imminent serious bodily injury at the time of the offense. *Stults v. State,* 23 S.W.3d 198, 205 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd).

    The requisite intent may be inferred from the acts, words, or conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982). Section 22.07 does not require the victim or anyone else to be actually placed in fear of imminent serious bodily injury. *Id.; Cook,* 940 S.W.2d at 347. Nevertheless, the reaction of the victim–regardless of whether the threat was real or was carried out–is some evidence of the defendant's intent. *Hadnot v. State,* 884 S.W.2d 922, 925–26 (Tex.App.—Beaumont 1994, no pet.). The offense is completed if the accused, by his threat, sought as a desired reaction, to place a person in fear of imminent serious bodily injury. *Dues,* 634 S.W.2d at 306; *Poteet v. State,* 957 S.W.2d 165, 167 (Tex.App.—Fort Worth 1997, no pet.). It is immaterial whether the accused had the capability or the intention to

carry out his threat. *Dues,* 634 S.W.2d at 305.

    Applying the above standards to this case, we conclude that the evidence is both legally and factually sufficient to support the trial court's judgment that appellant intended, by his threats, to place J.M. and C.L. in imminent fear of serious bodily injury. Appellant made several threats to J.M. and C.L., including statements that, if the girls told anybody about his sexual advances he would "blow [their] brains out," that if she slapped him for grabbing her chest, "that would be the last person you slapped [be]cause I would ... put a nine millimeter to your head," and that he was going to come up to the school with his "homeboys" and kill the girls. Both girls feared appellant's threats and thought he was capable of carrying them out.

Appellant urges that his threats were conditional, and therefore, the State has not shown that there was an imminent threat of serious bodily injury. We disagree. Although appellant threatened to kill the girls if they told somebody about his comments or if one of them slapped him in self-defense, he coupled those "conditioned" threats with repeated attempts to touch J.M.'s chest and statements that he would "ram my dick down your throat." These words and actions indicated that appellant wanted the girls to immediately fear him due to the imminent possibility that he would react violently to the girls' telling on him or slapping him in self-defense. The trial court could infer from appellant's acts, words, and conduct that he intended to place J.M. and C.L. in fear of imminent serious bodily injury. *See Dues,* 634 S.W.2d at 305; *Poteet,* 957 S.W.2d at 167. We overrule appellant's first and second points.

## EXCULPATORY EVIDENCE

In his third point, appellant complains that his right to a fair trial was violated because the State failed to timely disclose evidence as required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Specifically, he alleges that because the State withheld the statements that J.M. and C.L. made to their school principal until fifteen minutes before trial, he was deprived the ability to properly impeach the victims at trial and to call additional witnesses.

■ The prosecution violates due process when it suppresses evidence in its possession favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.; Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim.App.2000). Impeachment and exculpatory evidence are included within the scope of the *Brady* rule. *Wyatt*, 23 S.W.3d at 27. To preserve *Brady* error, a complaint must be made as soon as the grounds for the complaint are apparent or should be apparent. *See* TEX.R.APP. P. 33.1(a)(1); *Wilson v. State*, 7 S.W.3d 136, 146 (Tex.Crim.App.1999).

■ In this case, appellant did not request a continuance or make any objection to the documents when the State handed him the written statements that C.L. and J.M. had made at their school. Instead, appellant offered C.L.'s statement into evidence during his cross-examination of C.L. The State then offered J.M.'s statement into evidence during its direct examination of J.M., without any objection from appellant. Appellant also used J.M.'s statement in his cross-examination of her. The record reflects that appellant did not raise any objection about the statements until he filed his first amended motion for new trial. Because appellant had notice of the issue before trial began and continued to

have notice throughout the adjudication and disposition hearings, he waived his right to complain on appeal of the State's untimely disclosure of the statements. *See Wilson*, 7 S.W.3d at 146.

■ Moreover, even if we considered appellant's complaint to be timely, his claim would fail. To prevail on a *Brady* claim where the State's disclosure is tardy, the appellant must show that the late disclosure prejudiced him. *Id.* To show prejudice, the appellant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the outcome of the proceeding would have been different. *Id.; Wyatt*, 23 S.W.3d at 27.

■ Appellant has not satisfied his burden. Appellant claims had he received the victims' statements earlier, he would have been able to prepare better for trial and could have called additional witnesses in his defense. Appellant, however, does not identify who he would have called as additional witnesses or what their testimony might have been. Moreover, appellant used the statements to cross-examine both C.L. and J.M. and does not explain how he would have changed the cross-examination if he had had more time for reflection. Based on this record, there is no reasonable probability that the outcome of the proceeding would have been different had the State disclosed the victims' statements earlier. We overrule point three.

## WAIVER OF JURY TRIAL

■ In his fourth point, appellant complains that he did not knowingly and voluntarily enter his waiver of a jury trial because his counsel did not receive the victims' statements to the vice-principal until immediately before trial.

At an adjudication hearing, a child is entitled a jury trial unless a jury is waived

under section 51.09 of the family code. Tex. Fam.Code Ann. § 54.03(b)(6) (Vernon Supp.2001). The waiver must be made by both the attorney and the child, the attorney and child must have been informed of and understood the right to jury trial and possible consequences of waiving it, the waiver must be voluntary, and the waiver was made in writing or in court proceedings that are recorded. *Id.* § 51.09.

The record reflects appellant's waiver of a jury trial is clear and unequivocal. Before trial, in the presence of his attorney, appellant was informed of and stated that he understood the consequences of the waiver of a jury trial. The trial court admonished appellant and read the allegations against him. Therefore, his waiver was voluntary and appears in the record. *See id.*

We turn to whether the State's untimely disclosure of the victims' statements prevented appellant from deciding to waive his right to a jury trial in an intelligent manner. As discussed above, although appellant received a copy of the victims' statements in an untimely fashion, appellant made no objection when he received them. Moreover, he received them *before* he waived his right to a jury trial in open court and before the trial court admonished him on the record about waiving his right to a jury trial. Neither defense counsel nor appellant alerted the trial court to the girls' statements when the State provided them to appellant fifteen minutes before trial. Nor did defense counsel or appellant attempt to withdraw appellant's written waiver of a jury trial or otherwise attempt to change appellant's

waiver of the jury trial. There is nothing in the record to demonstrate that appellant did not knowingly and voluntarily waive his right to a jury trial. We overrule point four.

## CONCLUSION

Having overruled each of appellant's points, we affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

DAUPHINOT, Justice, dissenting.

I respectfully dissent from the majority's holding that the evidence is legally and factually sufficient to support the trial court's judgment that Appellant intended, by his threats, to place J.M. and C.L. in fear of "imminent" serious bodily injury.

The term "imminent" as it relates to threats of bodily injury or death in various sections of the penal code has been interpreted to mean that such injury or death is "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near."[1] It refers to a present, not a future, threat of harm.[2] In other words, the threat must be of present injury, rather than of some future consequence.[3]

Here, Appellant's threat to kill J.M. if she slapped him was conditioned on the happening of two events: (1) Appellant decides one day to touch her chest; and (2) J.M. decides to slap Appellant in response. Similarly, Appellant's threats to blow the girls' brains out with a nine millimeter

1. *Brown v. State,* 960 S.W.2d 265, 268 n. 1 (Tex.App.—Corpus Christi 1997, no pet.) (citing *Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim.App.1989)).

2. *Anguish v. State,* 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd);

*Brown,* 960 S.W.2d at 268 n. 1; *Kessler v. State,* 850 S.W.2d 217, 222 (Tex.App.—Fort Worth 1993, no pet.).

3. *Brown,* 960 S.W.2d at 268.

were conditioned upon the girls deciding to tell somebody about Appellant's sexual comments. It is true, as the majority points out, that conditioning a threat of harm on the occurrence or nonoccurrence of an event does not necessarily mean that the harmful consequences threatened are not imminent.[4] For example, in *Green v. State*, the court of criminal appeals held that the conditional threat, "If you don't give me the money, I'm going to cave your head in," was sufficient to prove a threat of imminent bodily injury.[5] In that case, the threat of harm to be inflicted immediately on the complainant had he failed to comply was held sufficient to show that he was placed in fear of imminent bodily injury. Here, however, Appellant's threats were of future harm only. Threatened harm in the future and threatened harm conditioned upon the occurrence of a future event will not suffice to satisfy the requirement that the threatened harm be "imminent."[6]

In the case now before us, there is no evidence that Appellant accompanied the conditional threats—if you tell anybody, I'm going to blow your brains out, and if you slap me for touching your chest, I'm going to put a nine millimeter to your head—with threats of serious bodily injury to be inflicted imminently.[7] In other words, there is no evidence that at the time Appellant made the threats to J.M. and C.L., the threatened harm was "on the verge of happening" or "near at hand."[8] Essentially, the substance of Appellant's threats were as follows: if you tell anybody [in the future], I will kill you [in the future]; or, if I touch your chest [in the future] and you slap me [in the future], I will kill you [in the future].[9] The record does not reflect that Appellant either intended or was prepared to carry out his threats immediately.[10] Such threats of future harm conditioned upon future occurrences are in contrast to conditional threats of imminent harm such as, "If you don't give me the money [right now], I'm going to cave your head in [right now]."[11]

Accordingly, I would hold that no rational fact finder could infer from Appellant's acts, words, or conduct that he intended to place either J.M. or C.L. in fear of imminent serious bodily injury. I would, therefore, reverse the judgment for legally insufficient evidence to support the trial court's finding in this regard.

4.  *Green v. State*, 567 S.W.2d 211, 213 (Tex. Crim.App. [Panel Op.] 1978).

5.  *Id.* at 212–13.

6.  *Devine*, 786 S.W.2d at 270–71; *Blount v. State*, 542 S.W.2d 164, 168 (Tex.Crim.App. 1976) (Onion, P.J., concurring).

7.  *See, e.g., Bryant v. State*, 905 S.W.2d 457, 460 (Tex.App.—Waco 1995, pet. ref'd) (holding threat to county commissioner that if you do not grade my road, "I'm going to kick your god damn ass" insufficient to constitute threat of imminent serious bodily injury).

8.  *Devine*, 786 S.W.2d at 270; *Hill v. State*, 844 S.W.2d 937, 938 (Tex.App.—Eastland 1992, no pet.).

9.  *See Bryant*, 905 S.W.2d at 460.

10.  *See Anguish*, 991 S.W.2d at 886–87.

11.  *Green*, 567 S.W.2d at 212–13; *see also Garcia v. State*, 819 S.W.2d 634, 635–36 (Tex. App.—Corpus Christi 1991, no pet.) (holding conditional threat, "I'm going to get you if you don't come out," coupled with defendant holding shotgun, was sufficient to prove threat of imminent bodily injury).