NO. 07-02-0180-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 17, 2003

_____


JONATHAN CAMPBELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 228TH DISTRICT COURT OF HARRIS COUNTY;

NO. 850402; HONORABLE LARRY FULLER, JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.


**OPINION**


Appellant Jonathan Campbell appeals his conviction for the misdemeanor offense of Abuse of Official Capacity and punishment, assessed by the trial court, of a $750 fine and court costs of $240.25. He presents four issues for our review, questioning the sufficiency of the evidence, the indictment, the constitutionality of the statute under which

he was charged, and recitations in the trial court's judgment. Finding merit only in appellant's fourth issue, we reform the judgment of the trial court, and affirm it.

Appellant was indicted in July 2000, for the offense of Abuse of Official Capacity.[1] The indictment alleged appellant had misused government personnel who had "come into his custody by virtue of his office and employment" when he had a subordinate perform work at his home during working hours. It also alleged the value of the misuse was greater than $20 and less than $500.

The nature of appellant's challenges necessitates a recitation of the evidence presented at trial. The occurrence giving rise to his prosecution took place on January 10, 1999. At that time appellant was a Lieutenant in the Houston Police Department assigned to the evening shift at the city's southeast jail. His duties included supervision of sergeants assigned to the jail, including Sergeant J.C. Meyers. Meyers was also assigned to the evening shift and was scheduled to work on that day. The evening shift covers 3 p.m. until 11 p.m but, as administrative sergeant, Meyers' duties required him to work from 2:30 p.m. until 10:30 p.m. At trial Meyers testified appellant left a telephone message for him on January 9 in which appellant stated he instructed another sergeant to perform Meyers' duties on the 10th and requested Meyers to come to appellant's house about 2:30 p.m. to set up a computer. Meyers testified he took the message "as an order" rather than as a favor for appellant. Meyers called appellant on the morning of the 10th to ask appellant his address, and in that conversation told appellant he would come to appellant's house after

---

[1]Texas Penal Code Section 39.02 (Vernon 2003).

completing work at his second job at about 12:30 p.m. Meyers arrived at appellant's house about 12:45 p.m. where appellant showed him a new computer in its box and told Meyers where he wanted it set up. Meyers spent about three hours setting up the computer and printer, somewhat longer than he expected it to take. After completing the basic setup about 3 p.m., appellant "suggested" that Meyers set up an Internet connection. Meyers spent about three more hours installing and configuring software to use a commercial service for Internet access. Part of that time was due to a problem with appellant's telephone service.

When Meyers left appellant's home about 6 p.m., he told appellant he was going to get dinner. According to Meyers, appellant said "I don't expect to see you when I get there," with reference to the jail. Meyers did not go to the jail at all on the 10th. On cross-examination, Meyers testified that, by starting the task earlier than the 2:30 time appellant's telephone message mentioned, he initially expected to be able to complete installation of the computer in time to work his entire shift at the jail, but said that he never discussed that expectation with appellant.

The State's next witness was Sergeant Kevin Bradshaw. He testified that appellant called him on January 9th and instructed him to arrive early the next day to perform roll call because Meyers would be on special assignment. According to Bradshaw, special assignment meant that an officer would be working, just not at his usual position. Bradshaw recorded Meyers on the roll call, asserting he did not know how long Meyers would be on special assignment. He did not see appellant or Meyers at the jail on January 10th.

3

The State presented the testimony of Captain Robert Montgomery, appellant's supervisor. He described the duties of a lieutenant in the jail division. He said appellant was Meyers' immediate supervisor and had authority to assign Meyers to special assignments which would not be optional, but would be part of Meyers' job that he would be required to perform. Appellant had never requested, and Montgomery had not authorized, appellant to work at home or to have Meyers install a computer at appellant's home. According to Montgomery, appellant had no need for Internet access to perform his duties and his administrative duties focused on reviewing correspondence generated by the sergeants he supervised rather than creating the documents.

The State called Lieutenant Michael West of the Houston Police Department who held the same position as appellant at the southeast jail but worked the night shift. He testified all the lieutenants at the jail used the same office during their respective shifts. That office contained a desktop computer and a terminal connected to the Department's mainframe computer. The desktop computer was used for word processing but did not have access to the Internet in January 1999, or at the time of trial in January 2002. West stated he was trying to get Internet access through that computer for purposes of submitting requests for "extra-job" permits and in-service training. He also testified those two Department resources became available online only in January 2002. The only time West used his home computer for Department work was occasional revision of documents drafted at the Department.

The State's final witness was Sergeant Sharon Evans, who was assigned to the internal affairs division in January 1999. On January 10, 1999, Evans and two other

officers were watching appellant's house as part of another investigation into whether he was reporting to work as scheduled. When the three arrived at the house about 2:30 p.m. on January 10, 1999, they saw appellant's city vehicle and a truck registered to Meyers. They watched Meyers leave the house shortly before 6 p.m. and they remained at the house until the end of appellant's shift at 11 p.m. Portions of a video recording made by Evans were introduced into evidence.

At the conclusion of the State's case, appellant moved for a verdict of acquittal which was denied. Appellant's first witness was Sergeant Michael Murray with the Department who generally testified the administrative facilities, specifically the computers, at the southeast jail were inadequate and inferior to those in other divisions of the Department. When asked if he would have completed some reports at home if he had compatible computer equipment, Murray said he would not because the Department's policies required completion of reports during a shift, even if that required staying after the shift. He did recall compiling a wish list for the jail in early 1998, and that appellant requested inclusion of a computer with Internet access on the list.

Murray recounted a conversation with appellant concerning Meyers' appreciation for financial advice appellant gave to Meyers and Meyers' offer to help appellant with his home computer. On cross-examination, Murray said he was a "close personal friend" of appellant. The State elicited testimony from Murray that appellant actively invested in residential real estate and may have been motivated to get Internet access to further his investment activities.

5

Sergeant Charles Pugh, who also worked in the southeast jail under appellant also testified to the inadequacy of the computer equipment in that jail. Pugh said he did some of his administrative work on a computer at his home, he did so largely for his own convenience, and he had never been told he could not work at home. When asked if he would consider a special assignment from his supervisor as an order, Pugh responded "I think it's in all our best interest to accommodate our supervisors whether or not it's legal."

Appellant testified in his own defense. He described the mainframe terminal and desktop computers in the lieutenants' office in the southeast jail, and stated he never used the desktop computer in that office, opting to prepare documents on a newer computer in the sergeants' office. This would occasionally present a problem when appellant was drafting performance reviews on the sergeants whose office he was using. Appellant offered examples of tasks he could perform more efficiently using a computer, including recording notes from meetings he conducted, and using a calendar program to record the training schedules and records of jail employees. Appellant said a new computer would also be valuable in keeping track of property assigned to the jail. He testified that the desktop computer in the sergeants' office would not be adequate to handle these tasks. He also discussed his desire to get Internet access to research civilianization[2] of the jail.

When it became apparent to him in late 1998 that the Department was not going to provide a new computer for the lieutenants' office, appellant decided to buy his own. In

_____

[2]Civilianization was described as the use of civilian employees in the jail to replace commissioned peace officers to reduce costs and allow the officers to be assigned to patrol and other duties requiring commissioned officers.

addition to the Department-related uses described above, appellant said he also planned personal use of the computer. He had discussed his belief in the need for new computers in the jail with Meyers on more than one occasion. Appellant testified that Meyers had offered to set up a personal computer for him in the fall of 1998. He believed the offer was made as a personal favor because appellant had given Meyers advice on personal problems and financial matters, such as telling Meyers how he could invest in real estate.

Appellant testified that his request to Meyers on January 9, 1999 was not an order but simply an acceptance of the earlier offer. He expected Meyers to do the work on his own time and to finish the work before his shift started. Appellant explained that he instructed Sergeant Bradshaw to perform the roll call to give Meyers an extra 30 minutes before starting his shift. He denied asking Meyers to arrive at his home at 2:30 p.m.

Appellant's description of the work required to get the computer and Internet connection set up mirrored that given by Meyers. He agreed that Meyers left about 6 p.m. When asked if there was a "justification for [Meyers] doing at least part of the work on Houston Police Department time," appellant said there was because of his intent to utilize the Internet "to do part of my police job," and that it was "ultimately going to benefit the department." Appellant testified that he expected Meyers to report to the jail for the remainder of his shift after leaving appellant's house. Appellant admitted saying to Meyers that he would not see Meyers again that evening, but meant he would not see Meyers at the jail because he, appellant, was not going to the jail that night, even though he was assigned to work.

On cross-examination, the State elicited testimony from appellant that he invested in residential real estate and a computer at his home, particularly one with Internet access, would be useful in conducting those activities. Countering appellant's testimony that he did not think there was anything wrong with having Meyers help him during Meyers' shift, the State presented testimony that in 1984 appellant had been disciplined for having another Department employee take him to pick up a personal car during the employee's shift. The court did not rule on appellant's objection to the evidence, but said he would not consider "extraneouses" (sic). Appellant also admitted he never submitted any work to the Department that had been done on his home computer, but noted he was employed by the Department for only about eight days after it was installed.

On this evidence, the trial court found appellant guilty, imposing the fine and court costs noted above. Appellant timely perfected appeal.

Appellant's first two issues challenge the legal and factual sufficiency of the evidence supporting his conviction. He specifically argues the evidence is insufficient to support findings that he intended to obtain a benefit and defraud the Houston Police Department, or that he ordered Meyers to set up his home computer.

The standards by which we determine the legal and factual sufficiency of the evidence are well established. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996). It is sufficient to note that when presented with both challenges, we must first determine if the evidence is legally sufficient, and if it is legally insufficient, render a judgment of acquittal.

8

If the evidence is legally sufficient, we must then determine if it is factually sufficient measured by the standards set out in *Clewis.* 922 S.W.2d at 134.

In considering a legal insufficiency challenge, we are required to view the evidence in the light most favorable to the prosecution and then determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Sufficiency is measured against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge for the case would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* at 239-40. This standard also applies in non-jury cases. *Gollihar v. State,* 46 S.W.3d 243 (Tex.Crim.App. 2001).

The offense of Abuse of Official Capacity is set out in section 39.02 of the Penal Code. (Vernon 2003). As relevant here, it provides:

> A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . misuses government property, services, or personnel, or any other thing that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

The indictment alleged that appellant:

> [W]hile a public servant . . . and with intent to obtain a benefit and defraud another, intentionally and knowingly misuse[d] government personnel, . . . that had come into his custody by virtue of his office and employment, in that defendant was Sergeant J.C. Meyers' supervisor, by ordering [Meyers] to

9

> report to the defendant's home on a paid work day rather than to report to his work location [to] install the defendant's personal home computer system[.]

Appellant does not contest that he was a public servant under the statute. His first issue challenges the legal sufficiency of the evidence that he (1) intended to obtain a benefit and defraud the Police Department, and (2) "ordered" Sergeant Meyers to set up the computer.

We initially note that the State did not have the burden to prove that appellant held both the intent to obtain a benefit and the intent to defraud the Police Department, even though the indictment stated the allegations in the conjunctive while the statute presents those intent elements disjunctively as alternatives. *See* Tex.Pen.Code § 39.02(a) (Vernon 2003); *Eastep v. State*, 941 S.W.2d 130, 133 (Tex.Crim.App. 1997).

Although appellant purports to challenge the evidence that he intended to obtain a benefit or defraud the Department, his argument is that the evidence is legally insufficient because both he and the Department benefitted from Meyers' work on January 10, 1999, and "no evidence rebutted" his claims that he had Meyers set up the computer so he could use it "primarily" for work related purposes. This argument does not challenge the finding that he intended to obtain a benefit, but rather seeks to show there was no misuse because the Department benefitted from the work. The argument must fail. First, it asks us to disregard the standards governing legal sufficiency review, which mandate that we consider the evidence in the light most favorable to the judgment. *Jackson*, 443 U.S. at 319. Secondly, under the case law, evidence of a benefit to the Department is not controlling in

10

a legal sufficiency analysis of the evidence supporting a finding of appellant's intent to obtain a benefit.

The evidence supporting a finding that appellant intended to obtain a benefit from Meyers' work during the time he was being paid by the Department included appellant's own testimony that he planned to use the computer for personal as well as work-related uses, and that the computer would be useful in pursuing his real estate investments. Evidence of a possible benefit to the Department cannot render the evidence of appellant's intent to obtain a personal benefit legally insufficient. In *State ex rel. Hightower v. Smith*, 671 S.W.2d 32 (Tex. 1984), the court was presented with the question whether a sheriff had misapplied county resources under the predecessor to section 39.02 by directing deputies to patrol an apartment complex in exchange for his free use of an apartment. The court held the evidence legally sufficient to support a jury finding that the sheriff committed an illegal act, supporting his removal from office. 671 S.W.2d at 35. Because the evidence supported the conclusion the patrols were conducted for his benefit, the court rejected the sheriff's argument there was no misapplication because the patrols also fulfilled a legitimate function of the department. *Id.* We do not read the Court of Criminal Appeals' discussion of *Hightower* in *Margraves v. State* to disapprove of that holding. 34 S.W.3d 912, 916 (Tex.Crim.App. 2000). Under *Hightower*, the evidence here was legally sufficient to support a conclusion that appellant had Meyers set up his computer intending to obtain a personal benefit.

Appellant also challenges the legal sufficiency of the evidence that he "ordered" Meyers to set up the computer. We disagree with the argument's premise that the State

11

was required to prove he gave a direct order to Meyers. Section 39.02(a) does not contain the requirement that a person "order" government personnel to do something to be guilty of misusing government personnel. The conduct prohibited by the statute is misuse, not misuse by ordering. The indictment's allegation that appellant misused Meyers by ordering him to report to appellant's home on a work day rather than to his normal post, then, is an allegation of a non-statutory fact of the type discussed in Presiding Judge Keller's concurring opinion in *Fuller v. State*, 73 S.W.3d 250, 256-57 (Tex.Crim.App. 2002). Whether the State has the burden to prove such an allegation (or, said another way, whether the allegation is included in the hypothetically correct jury charge for the offense) depends on whether the allegation is necessary for an adequate description of the particular offense for which the defendant was tried. *Id*. at 256. Under the rule adopted in *Gollihar*, that necessity turns on considerations of notice and double jeopardy, and is evaluated through the material variance test. 46 S.W.3d at 257. Applying such an analysis to this case, we first observe that viewing the evidence in the light most favorable to the judgment would include accepting as true Meyers' testimony that appellant's message "instructed" him to report to appellant's home at about 2:30 p.m., when his shift was to begin.[3] Appellant complains on appeal that the indictment did not adequately give him notice of the nature of the accusation against him, but his complaint is not that he was surprised by Meyers' testimony.

---

[3]During his testimony at trial, Meyers repeatedly characterized appellant's communication to him as "instructing" Meyers to appear at appellant's residence to install the computer. Although Meyers was asked at trial whether appellant used the phrase "I order you" or the word "order" in his telephone message, Meyers was not asked whether appellant used the word "instruct."

With respect to double jeopardy, appellant clearly would not be at risk of a subsequent prosecution for misuse of Meyers on that occasion following his conviction in this case. Under the *Gollihar* test, then, the variance between the indictment's allegation that appellant ordered Meyers to appear at appellant's residence at the start of Meyers' shift to install appellant's computer and the proof that he instructed Meyers to do so is not material and does not render the evidence legally insufficient.

Appellant also argues that the State had no theory of the manner in which appellant misused Meyers other than his ordering him, and that failure of proof of the order renders the evidence of misuse legally insufficient. We must disagree here as well. The argument boils down to a contention that appellant cannot have ordered Meyers to take the actions that resulted in this prosecution without using the word "order." In the context of this communication to a police sergeant from his immediate supervisor concerning actions he was to take at the time his shift began, we see no difference in an order and an instruction.

Viewed in the light most favorable to the judgment, the evidence showed appellant's instruction to Meyers to arrive at his home at the start of Meyers' shift and that Meyers was on "special assignment," appellant's instruction to Bradford that Meyers was on "special assignment," Captain Montgomery's testimony that an officer was required to perform a "special assignment" assigned by a supervisor, and appellant's statement to Meyers not to go to the jail that evening. That evidence is legally sufficient to establish appellant misused government personnel under his control for his own benefit. We overrule appellant's first issue.

13

Appellant's second issue questions the factual sufficiency of the evidence supporting the same elements challenged in his first issue. A factual sufficiency review requires us to determine whether, on neutral review, the proof is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate taken alone, is greatly outweighed by contrary proof. *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App. 2000). In support of this issue, appellant relies on the same evidence cited in support of his first issue. This evidence was offered to show the Department benefitted from Meyers' work at appellant's house. It included evidence that no Department regulation prevented appellant from doing Department work on his personal computer, that the computers at the southeast jail were inadequate and did not have Internet access, that appellant had unsuccessfully requested a computer with Internet access for the lieutenants' office at the jail, and that appellant intended to use his home computer "primarily" for police work. The holding in *Hightower* is equally applicable here: appellant's evidence of a possible public benefit, even a primary benefit, from his use of government resources does not negate the State's proof of the elements of the offense.

Appellant's second issue also challenges the factual sufficiency of the evidence that he ordered Meyers to set up the computer, again referencing the evidence discussed with respect to his first issue. Because appellant's issuance of a direct order to Meyers is not an element of the offense, we need not consider the sufficiency of the evidence supporting that fact. *See Gollihar*, 46 S.W.3d at 256. Appellant's reply brief makes the argument that if there was no order, there was no misuse. We will consider appellant's issue, then, as a challenge to the sufficiency of the evidence that he misused Meyers by virtue of being his

14

supervisor. In addition to the evidence concerning the benefits to the Department of appellant having a home computer, the evidence contrary to the court's judgment included appellant's testimony that he merely accepted Meyers' prior offer to set up a home computer for him, that Meyers was doing the work as a personal favor, and that appellant expected the work to be done before Meyers' shift started. Each of these assertions was controverted. Although Meyers testified that he did not think he was doing anything wrong by installing appellant's computer on Department time, he also testified he did not view appellant's request as a personal favor. As noted, Meyers characterized appellant's message to him as an instruction. Resolution of conflicts in testimony depends on the relative credibility of the witnesses. The fact finder who is present at trial and observes the witnesses' demeanor is in the best position to evaluate their credibility and the weight to be given their testimony. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997). A factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Clewis*, 922 S.W.2d at 133. Under *Clewis*, an appellate court's authority to disagree with the fact finder's determination is appropriately used only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice. "Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App. 2000). Appellant does not present a persuasive argument showing why we should disregard the trial court's resolution. We overrule appellant's second issue.

15

In his third issue, appellant challenges the trial court's failure to quash the indictment because it failed to charge an offense, was based on an unconstitutional statute, and was impermissibly vague.

Appellant's first argument in support of this issue is that the indictment failed to explain how he unlawfully misused Sergeant Meyers or how he "came into custody" of Meyers, which, appellant contends, are elements of the offense. Appellant's argument merely notes the indictment did not cite any Department regulations explaining how he was to use his subordinates, but he fails to cite or discuss any relevant authority imposing that requirement. The indictment specifically alleged the tasks appellant had Meyers perform and that appellant acted with intent to obtain a benefit. With regard to the allegation that appellant was in "custody" of Meyers, the indictment explained that appellant "was Sergeant J.C. Meyers' supervisor." These allegations mirror the elements of the offense set out in section 39.02(a).

Appellant next argues section 39.02 is unconstitutionally vague. After citing authority reciting the rule that a criminal statute must give a person of ordinary intelligence fair notice of what conduct is forbidden, *see Cain v. State*, 855 S.W.2d 714, 718 (Tex.Crim.App. 1993), appellant argues that section 39.02 "does not 'clearly' criminalize having a government subordinate miss work to set up a personal computer at a house," that a reasonable person would think the conduct "might be subject to administrative discipline," and "a reasonable person would not think that what Lt. Campbell did constituted a crime."

16

We must always begin with the presumption that a statute is constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App.1979). The predecessor to section 39.02 was upheld against a vagueness challenge in *Margraves*. 34 S.W.3d at 921. Appellant's argument fails to distinguish *Margraves'* holding on this issue or overcome the presumption of constitutionality which attaches to legislative acts.

Appellant's third argument asserts the indictment was impermissibly vague because it failed to define the terms "misuse" or "custody." He argues the term misuse should have been defined because section 39.01(2) defines that term in four different ways. An examination of the statute reveals, however, that it defines the term misuse only with respect to misuse of property. The indictment alleged misuse of government personnel, and went on to specify the conduct constituting the misuse. The State's inclusion of the word "custody" in the indictment tracks the statutory language. Inclusion of it did not render the indictment impermissibly vague because the indictment specified the nature of the relationship, that appellant was Meyers' supervisor. Appellant's third issue is without merit and is overruled.

Appellant's fourth issue complains of recitations in the trial court's judgment that he pled guilty and that the offense was a class A misdemeanor. The record affirmatively shows that appellant pled not guilty. It also shows the value of the misuse alleged was over $20 and less than $500, making the offense a class B misdemeanor. Tex.Penal Code ann. § 39.02(c)(2) (Vernon 2003). The State agrees these recitations in the judgment are in error. We sustain this issue and, as requested by both parties, reform the judgment to

17

reflect that appellant pled not guilty and the offense is a class B misdemeanor. *See* Tex.R.App.Proc. 43.2(b). As reformed, we affirm the judgment of the trial court.


James T. Campbell
Justice


Publish.